FILED
2016 Jul-08  PM 01:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| GENIE BUCHANAN, an individual,    ) | |
|       ) | |
|     Plaintiffs,    ) | |
|       ) | |
| v.    ) | |
|       ) | Civil Action No.: |
| VELOCITY INVESTMENTS, LLC,    ) | |
| a Corporation,    ) | |
|       ) | |
|     Defendant.    ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendant and states as follows:

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendant and its agents in its illegal efforts to collect a consumer debt from Plaintiff.

2. Defendant sued the Plaintiff for a debt Plaintiff did not owe and for which the statute of limitations had expired.

3. The lawsuit against Plaintiff was filed in a hope of obtaining a default judgment or coercing Plaintiff into paying on a debt Plaintiff did not owe.

4.    This is the pattern of collection activity by Defendant in its collection lawsuits in Alabama.

5.    The Plaintiff won the lawsuit when Defendant filed a motion to dismiss the lawsuit with prejudice.

## JURISDICTION

6.    Personal jurisdiction exists over Defendant as Defendant has the necessary minimum contacts with the State of Alabama and this suit arises out of Defendant's specific conduct with Plaintiff in Alabama.  All the actions described in this suit occurred in Alabama.

7.    Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

8.    Venue is proper as Defendant does business in this judicial district and Plaintiff lives in this judicial district.

## PARTIES

9.    Plaintiff Genie Buchanan (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district in Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

10. Defendant Velocity Investment, LLC, ("Defendant" or "Velocity[1]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama.  It is a "debt collector" under the FDCPA. It is incorporated in Delaware and has its principal place of business in New Jersey.  Upon information and belief, any and all members of the LLC are citizens of Delaware and/or New Jersey.

## RECOGNITION BY CONGRESS OF THE WIDESPREAD ABUSE BY COLLECTORS

11. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

12. Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

13. Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

14. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

---

[1] "Velocity Investments, LLC" means Velocity directly or through its debt collectors, employees and agents and the collection law firm that sued Plaintiff, or otherwise took any collection action against Plaintiff.

(a)  There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)  Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)  **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d)  Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)  It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## Facts Before The Collection Lawsuit Was Filed

15.  Plaintiff purchased a 2007 Suzuki from Joe Gibson Suzuki for the benefit of Keyes Carter who lived in South Carolina.

16.  Plaintiff did not receive communications alerting Plaintiff of any alleged default on this loan.

17.  It appears that Citifinancial Auto, Santander Consumer, and anyone else involved with this loan failed to use Plaintiff's correct address.

18. Instead of using Plaintiff's actual address in Tuscaloosa, these entities misspelled Plaintiff's street name and put Greenville, South Carolina, instead of Tuscaloosa, Alabama, while putting the Tuscaloosa zip code.

19. There is no good explanation for this as the company that sold the vehicle, Joe Gibson Suzuki, had the Alabama address for Plaintiff and the Greenville, South Carolina address for Keyes Carter.

20. On May 20, 2010, Citifinancial Auto claimed to have sent a letter to Plaintiff but actually sent it to the wrong street name and to an address in Greenville, South Carolina rather than Tuscaloosa, Alabama.

21. Plaintiff did not receive this letter.

22. The letter states that the 2007 Suzuki is in the possession of Citifinancial and it will be sold after June 3, 2010.

23. The letter also states that the amount owed, as of the date of the letter, is $31,427.37.

24. A letter from Santander dated September 6, 2010, was allegedly sent to Plaintiff but it also used the wrong address.

25. Plaintiff did not receive this letter.

26. The letter states Citifinancial Auto still owns the loan but Santander would service the loan.

27.   But supposedly Citifinancial Auto sold its loans to Santander by June 23, 2010, according to documents submitted with the collection Complaint.

### The Circuit Court Collection Lawsuit

28.   On November 10, 2015, Defendant Velocity sued Plaintiff in the Circuit Court of Tuscaloosa County, Alabama, with a case number of CV-2015-901211.

29.   In this suit, Defendant Velocity asserted it was the owner of a certain debt allegedly owed by Plaintiff.

30.   Defendant Velocity alleged Plaintiff owed Velocity $17,423.94.

31.   Defendant Velocity also claimed court costs and attorney fees.

32.   Defendant Velocity claimed Plaintiff did business with Defendant Velocity.

33.   Defendant knows that Plaintiff has never done business with Defendant.

34.   The Complaint alleges Plaintiff gave Defendant Velocity a security interest in the vehicle which is false.

35.   The Complaint alleges Defendant Velocity declared the loan in default which is false.

36.   The Complaint alleges Defendant Velocity repossessed the vehicle which is false.

37.   The Complaint alleges Defendant Velocity sold the vehicle which is false.

38.   Defendant Velocity did accurately state Plaintiff's address in Tuscaloosa which is different from the earlier correspondence claiming Plaintiff lived in South Carolina.

39.   Attached to the Complaint was a false document entitled "Assignment Case Cover Sheet."

40.   The stated purpose of the Assignment Case Cover Sheet was "to obtain a default judgment in the above-styled case."

41.   As merely one example of false representations, the Assignment Case Cover Sheet lacks the alleged purchase agreements from Santander to Cascade to Defendant Velocity despite saying it was including all assignments.

42.   This lawsuit, and the other Alabama lawsuits filed by Defendant Velocity every year, was filed with the intention of getting settlements from pro se consumers and default judgments on debts that Defendant Velocity cannot and will not prove it has any right to collect on.

43.   Defendant Velocity knew or should have known the statute of limitations had expired and the suit was improper.

44.   Even if the debt was ever owed to some entity or even down the line to "Velocity," it was owed more than four (4) years before suit was filed.

45.   The contract that created the alleged debt is for the sale of a good.

46.   In this case, it was for a vehicle.

47.    The seller was Joe Gibson Suzuki.

48.    Plaintiff was the buyer.

49.    The Uniform Commercial Code, as set forth in Alabama Code § 7-2-725, clearly states the statute of limitations is 4 years on a sale of a good.

50.    This means the collection lawsuit, even had it been brought by a company that owned the debt, must have been brought at least by 2014 as the car was reposed in 2010.

51.    Instead, the collection suit was brought in November of 2015.

52.    Velocity knew what the statute of limitation was and decided to file and to continue to leave pending a lawsuit that was beyond the applicable statute of limitations.

53.    Another intention of Defendant Velocity was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

54.    Defendant Velocity knew Plaintiff did not owe the debt sued on to Defendant Velocity.

55.    Defendant Velocity made misrepresentations and false statements in the lawsuit including that a debt was owed – Plaintiff owed none to Defendant Velocity.

56.   Defendant Velocity misrepresented the amount owed when Plaintiff owed Defendant Velocity nothing on this account.

57.   Defendant Velocity misrepresented the legal status of the debt as being owed when Plaintiffs owed nothing to Velocity.

58.   Defendant Velocity misrepresented that Defendant Velocity had standing and the right to bring the lawsuit when Defendant Velocity did not have standing and did not have the right to bring the lawsuit.

59.   Defendant Velocity did not own the debt at the time the lawsuit was filed but it misrepresented that it did own the debt.

60.   Defendant Velocity did not own the debt at any time the lawsuit was pending but it misrepresented that it did own the debt.

61.   This bogus collection suit against Plaintiff was brought as part of a strategy and policy of scattershot litigation designed to sue Alabama consumers who do not owe the debt to Defendant Velocity in order to coerce or deceive the Alabama consumers into paying a debt not owed or to receive a judgment against the consumers, including Plaintiff.

## Plaintiff Answers The Velocity Lawsuit

62.   Plaintiff did not and does not owe the debt to Velocity.

63.   Plaintiff filed an Answer denying the allegations of Defendant Velocity.

64.   The Answer was filed on December 18, 2015, by Plaintiff's attorneys.

65.   Defendant Velocity received a copy of this denial.

66.   Defendant Velocity understood that Plaintiff was refusing to pay on this debt.

67.   Defendant Velocity understood that Plaintiff disputed this debt.

68.   Defendant Velocity knew Plaintiff did not owe this debt.

69.   Defendant Velocity made a conscious choice to continue to allow the lawsuit to move forward even though Defendant Velocity knew that there was no merit to the case, but Defendant Velocity sought to use the lawsuit and the court process to force Plaintiff to pay money on a debt Plaintiff did not owe to Defendant Velocity.

70.   Defendant Velocity had no witnesses or evidence to offer at trial and it knew this when it filed the lawsuit and at all times leading up to its Motion to Dismiss on March 1, 2016.

**Velocity Files A Motion To Dismiss The Lawsuit With Prejudice**

71.   Defendant Velocity realized that Plaintiffs were willing to fight this case and that Plaintiff had counsel representing them.

72.   Defendant Velocity knew that with its intention to never prove the case, with represented Plaintiff and with an inability to respond to discovery without revealing the case was filed without merit, it must dismiss the case.

73.   Defendant Velocity filed a Motion to Dismiss with Prejudice.

## Velocity Loses The Collection Case

74.  On March 1, 2016, District Court Judge Jeb S. Fannin entered an Order dismissing the case with prejudice.

75.  This ended the case Defendant Velocity filed against Plaintiff.

76.  No appeal or post judgment motion was filed.

77.  The adjudication on the merits is final and against Defendant Velocity.

## Remaining Factual Allegations Against Defendant Velocity

78.  Defendant Velocity has collected against Plaintiff when Plaintiff did not owe any money to Defendant Velocity on this account, which violates the alleged agreement creating this debt as the agreement does not allow for collecting a non existent debt from anyone, including Plaintiff.

79.  Defendant Velocity has misrepresented the debt to Plaintiff, including the amount of the debt, as none is owed.

80.  Defendant Velocity has misrepresented the debt to Plaintiff, including the legal status of the debt, as none is owed.

81.  Defendant Velocity has taken action it knows is illegal including suing on a debt it knew Plaintiff did not owe, suing before validating the debt, suing after the statute of limitations has expired, and allowing the case to remain pending on a debt it does not own and that Plaintiff does not owe to Defendant Velocity.

82.   Defendant Velocity knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff (and all others similarly situated) would be harassed, oppressed, and abused by the filing of a meritless lawsuit, the filing of a lawsuit on a debt not owed by Plaintiff, the filing of a lawsuit when Defendant Velocity did not own the debt, the filing of a lawsuit after the statute of limitations has expired, by misrepresenting numerous facts in the lawsuit, and by all other wrongful acts described in this Complaint.

83.   The debt being collected is a consumer debt as defined by the FDCPA.

84.   Plaintiff is a "consumer" as defined by the FDCPA.

85.   Defendant Velocity is a "debt collector" as defined by the FDCPA as when it allegedly received the supposed debt owed by Plaintiff, the alleged debt was in default and the collecting of defaulted debt is a major part of the business of Defendant Velocity.

86.   Defendant Velocity has full knowledge of what it is doing by filing bogus lawsuits– it is a sophisticated debt collector (debt buyer) and the decisions outlined in this Complaint and that will be shown through discovery were not "rogue" or "outlier" decisions but instead represent a well thought out plan and scheme to take money from Alabama consumers (including

Plaintiff) that Defendant Velocity has no right to take under state law and under the FDCPA.

87.   Defendant Velocity knows that it is suing Alabama consumers (including Plaintiff) who do not owe the debt being sued upon.

88.   Defendant Velocity knows that it is suing Alabama consumers (including Plaintiff) on debts that Defendant Velocity does not own which Defendant Velocity knows is not allowed in Alabama.

89.   Defendant Velocity is counting on the fact that many Alabama consumers (including Plaintiff) will not answer and so default judgments will be entered.

90.   This type of "scattershot" litigation strategy is improper, deceptive, and abusive as it is fundamentally unfair and deceptive to sue consumers (including Plaintiff) who do not owe the debt and it is also improper to sue when there is no intention of proving the lawsuit filed.

91.   Defendant Velocity knows that its "scattershot litigation" is improper but it has decided that this is the most effective way (as opposed to only making collection calls and sending collection letters,) to obtain money from Alabama consumers who do not owe the money to Defendant Velocity.

92.     The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

93.     It is a practice of the Defendant Velocity to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

94.     All actions taken by employees, agents, servants, or representatives of any type for the Defendant Velocity were taken in the line and scope of such individuals' employment, agency or representation.

95.     At no time has Defendant Velocity told or implied to Plaintiff that any conduct by any agent or employee of Defendant Velocity was outside the line and scope of such employment or agency.

96.     This includes collection counsel for Defendant Velocity who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Velocity.

97.     All actions taken by the Defendant Velocity were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff sand/or that its actions were taken in violation of the FDCPA and/or state

law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

98.   Defendant Velocity has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Velocity is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

99.   Defendant Velocity is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

100.   At no time before the collection suit, during the collection suit, after the collection suit, or even up to the date this Complaint is filed, has Defendant Velocity directly or indirectly, expressly or implicitly, apologized to the Plaintiff for the conduct described in this Complaint, which demonstrates that the conduct described was not accidental or unintentional but instead was intentional.

## CAUSES OF ACTION

### COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692d

101.   Section 1692d states, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

102.   Defendant Velocity violated Section 1692d by collecting this debt as alleged in this Complaint in paragraphs 1-5, 9-10, and 15-100.

103.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

### COUNT II.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e

104.   Section 1692e states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section."

105.   Defendant Velocity violated Section 1692e by collecting this debt as alleged in this Complaint in paragraphs 1-5, 9-10, and 15-100.

106.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT III.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(2)

107.   Section 1692e(2) states, "The false representation of the character, amount, or legal status of any debt;"

108.   Defendant Velocity violated Section 1692e(2) by collecting this debt as alleged in this Complaint in paragraphs 1-5, 9-10, and 15-100.

109.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT IV.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(10)

110.   Section 1692e(10) states, "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

111.   Defendant Velocity violated Section 1692e(10) by collecting this debt as alleged in this Complaint in paragraphs 1-5, 9-10, and 15-100.

112.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT V.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f

113.   Section 1692f states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

114.   Defendant Velocity violated Section 1692f by collecting this debt as alleged in this Complaint in paragraphs 1-5, 9-10, and 15-100.

115.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT VI.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f(1)

116.   Section 1692f(1) states, "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

117.   Defendant Velocity violated Section 1692f(1) by collecting this debt as alleged in this Complaint in paragraphs 1-5, 9-10, and 15-100.

118.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT VII.

## INVASION OF PRIVACY

119.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Velocity violated Alabama state law as described in this Complaint in paragraphs 1-5, 9-10, and 15-100.

120.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

121.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions"

including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

122.  Defendant Velocity intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

123.  Defendant Velocity intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

124.  Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

125.  The conduct of Defendant Velocity, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Velocity which occurred in a way that would be highly offensive to a reasonable person in that position.

126. This conduct includes the filing of a public lawsuit against Plaintiff.

127. A public lawsuit that has no merit and Defendant Velocity knew at the time it filed the lawsuit that it had no merit.

128. All of the wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant Velocity in its campaign of improper debt collection, which has led to the Plaintiff's privacy being invaded.

129. The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

130. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Velocity.

131. All acts of Defendant Velocity were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Velocity is subject to punitive damages.

## COUNT VIII.

## NEGLIGENT HIRING, TRAINING AND SUPERVISION OF
## INCOMPETENT DEBT COLLECTORS

132.  Defendant Velocity's collectors are allowed and encouraged to break state law in order to collect debts.

133.  This includes all of the violations of the law described in this Complaint in paragraphs 1-5, 9-10, and 15-100 and the paragraphs in this Count.

134.  Defendant Velocity is aware of the wrongful conduct of its collectors.

135.  Defendant Velocity negligently hired, trained, retained or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Velocity is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

136.  Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt buying company which is a "leader" in the industry, with countless compliance employees and lawyers, could possibly allow the wrongful conduct alleged unless this was part of a plan to be negligent in allowing incompetent collectors to run wild and damage Plaintiff while Defendant Velocity sat back to reap the rewards of

the wrongful conduct it had sowed.  The details of this will come out in discovery.

137.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT IX.

## WANTON HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

138.   Defendant Velocity 's collectors are allowed and encouraged to break state law in order to collect debts.

139.   This includes all of the violations of the law described in this Complaint in paragraphs 1-5, 9-10, and 15-100 and the paragraphs in this Count.

140.   Defendant Velocity is aware of the wrongful conduct of its collectors.

141.   Defendant Velocity wantonly hired, trained, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff. and Defendant Velocity is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

142.   Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt buying company

which is a "leader" in the industry, with countless compliance employees and lawyers, could possibly allow the wrongful conduct alleged, unless this was part of a well orchestrated design and plan of wantonly allowing incompetent collectors to run wild and damage Plaintiff while Defendant Velocity sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

143.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT X.

### INTENTIONAL HIRING, TRAINING, AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

144.   Defendant's collectors are allowed and encouraged to break state law in order to collect debts.

145.   This includes all of the violations of the law described in this Complaint in paragraphs 1-5, 9-10, and 15-100 and the paragraphs in this Count.

146.   Defendant Velocity is aware of the wrongful conduct of its collectors.

147.   Defendant Velocity intentionally hired, trained, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Velocity is thereby responsible to

the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

148. Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt buying company which is a "leader" in the industry, with countless compliance employees and lawyers, could possibly allow the wrongful conduct alleged, unless this was part of an intentional well orchestrated design and plan of allowing incompetent collectors to run wild and damage Plaintiff while Defendant Velocity sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

149. The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XI.

## WANTON CONDUCT

150. Defendant Velocity had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

151. Defendant Velocity had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

152.   Defendant Velocity acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint in paragraphs 1-5, 9-10, and 15-100 and the paragraphs in this Count.

153.   Defendant Velocity violated all of the duties Defendant Velocity had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

154.   It was foreseeable, and Defendant Velocity did in fact foresee it, the each and every action of Defendant Velocity would lead and did lead to the exact type of harm suffered by Plaintiff.

155.   The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XII.

## MALICIOUS PROSECUTION AGAINST DEFENDANT VELOCITY

156.   Defendant Velocity instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so as Plaintiff did not owe Defendant Velocity the debt sued upon.

157.   Defendant Velocity continued to prosecute the case with no reasonable basis to do so as Plaintiff did not owe Defendant Velocity the debt sued upon.

158.    Defendant Velocity filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit. While this failed, the attempt by Defendant Velocity shows the malice against Plaintiff.

159.    Defendant Velocity instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would result in an illegal judgment against the Plaintiff or would cause Plaintiffs to pay Defendant Velocity money on a non-existent debt.

160.    The malicious plan of Defendant Velocity included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and/or seizures of property and the Defendant Velocity tried to accomplish this by the Defendant Velocity's malicious and abusive actions.

161.    Throughout the entire illegal lawsuit against Plaintiff, Defendant Velocity knew at all times that there was no basis for the lawsuit and the intent and design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Velocity knew it was not entitled to receive.

162.    The litigation against Plaintiff filed by Defendant Velocity eventually resulted in adjudication in favor of Plaintiff on March 1, 2016.

163. The illegal and improper actions of the Defendant Velocity constitutes malicious prosecution and this cause of action is supported by paragraphs 1-5, 9-10, and 15-100 of the Complaint and the paragraphs in this Count.

164. This is the pattern and practice of Defendant Velocity – to file suits with no basis in an attempt to obtain default judgments against Alabama consumers or to obtain settlements from Alabama consumers who do not realize the bogus nature of the suit filed by Defendant Velocity.

165. The conduct of the Defendant Velocity has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

_____

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

_____

**Attorney for Plaintiffs**

**Serve defendant via certified mail at the following address:**

Velocity Investment, LLC
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104